## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOEL C. CONWAY,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION No. 3:14-82** |
| **v.** | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| **DAVEY TREE EXPERT COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

### I. Introduction

This matter comes before the Court upon consideration of Defendant's motion for summary judgment. (ECF No. 32). Defendant asserts that Plaintiff filed his claim under the Americans with Disabilities Act well beyond the applicable statute of limitations period. (*Id.* at 1). Defendant also asserts that Plaintiff failed to exhaust his administrative remedies prior to bringing suit on his Pennsylvania Human Rights Act claim, such that the claim is barred as a matter of law. (*Id.*). Defendant finally alleges that Plaintiff cannot establish that he was terminated because of his disability. (*Id.*).

The issues have been fully briefed, and the matter is now ripe for disposition. For the reasons that follow, Defendant's motion shall be granted.

### II. Jurisdiction and Venue

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 with regards to the ADA claim. The Court also has jurisdiction pursuant to 28 U.S.C § 1332

1

because the parties are in complete diversity and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in this judicial district.

## III. Background

### a. Procedural background

Conway initially filed the instant action in the Court of Common Pleas of Clearfield County, Pennsylvania. (ECF No. 1 at 1). The action was removed to this Court pursuant to 28 U.S.C. § 1441 on the basis that it arises, in part, under the laws of the United States, namely 29 U.S.C. § 12101 *et seq.* (*Id.* at ¶ 4).

### b. Factual background

Davey Tree performs "line clearing" work for public utilities, which includes clearing tree growth form power lines, clearing rights-of-way, and chemical brush control. (ECF No. 34 at ¶ 1). Davey Tree groups its employees in "crews" of three to four employees, one of which is the Foreman who manages and directs the crew. A General Foreman supervises several Foremen and their crews. A General Foreman's duties include the power to hire and discharge employees. (*Id.* at ¶ 2). In July of 2011, Davey Tree hired Plaintiff as a Trimmer to perform line clearing work. Michael Schatz ("Schatz"), a General Foreman of Davey Tree, hired Plaintiff. (*Id.* at ¶ 3). Schatz was aware of the fact that Plaintiff's leg was amputated below the knee and that Plaintiff was wearing a prosthetic leg at the time he was interviewed. Schatz hired Plaintiff knowing of his disability. (*Id.* at ¶ 4). Schatz was Plaintiff's supervisor for the duration of his

2

employment with Davey Tree. (*Id.* at ¶ 5). In October 2011, Davey Tree promoted Plaintiff to Foreman. As Foreman, Plaintiff ran his own crew that consisted of himself and two other employees. In addition to managing his crew, Plaintiff operated various machinery and sprayed chemicals alongside his crew. Plaintiff was also responsible for maintaining a weekly time sheet for his time and that of his crew, which detailed their activities and the time spent on each. (*Id.* at ¶ 6).

On June 25, 2012, Plaintiff and his crew sprayed herbicide around three large power structures, which support and raise to considerable height the power lines. The power structures were owned by First Energy and were commonly known as structure numbers 107, 108, and 109. Structures 107, 108, and 109 are located in a restricted area owned by the Pennsylvania Game Commission. (*Id.* at ¶ 7).

To access the land around the power structures, Plaintiff had to work around a tall fence. (ECF No. 36 at ¶ 8). A sign identifying the land as that of the Game Commission stood near Structure 107. (ECF No. 34 at ¶ 8, citing ECF No. 33-2 at 27). Plaintiff had done work on Game Commission Lands prior to the incident on June 25, 2012. (ECF No. 36 at ¶ 8). Defendant asserts that Schatz had held a meeting with his crews several weeks prior to this incident in which he instructed the employees, including Plaintiff, not to spray on the Game Commission Land. (ECF No. 34 at 3). Defendant further asserts that the restricted area sprayed by Plaintiff and his crew was part of a wildlife preserve that had not been altered by humans for decades, and that Plaintiff's spraying caused substantial damage to the previously untouched vegetation in that area. (*Id.*). Plaintiff disputes that he had been

3

informed of the nature of the area or that he knew that the area around the power structures had not been altered by humans for decades. (ECF No. 36 at ¶¶ 9–10).

Davey Tree expended considerable efforts to ameliorate the situation caused by Plaintiff's use of herbicide. (ECF No. 34 at ¶ 11). On June 28, 2012, after Davey Tree learned of Plaintiff's actions, Schatz called Plaintiff and asked Plaintiff to meet him. Plaintiff spoke with Schatz. Schatz requested to see the time sheet maintained by Plaintiff for his time and that of his crew. (*Id.* at ¶ 12). Defendant asserts that it became clear that Plaintiff had altered his time sheet in an effort to make it appear as though he had not sprayed Structures 107 through 109. (*Id.* at ¶ 13). Plaintiff testified that his time sheet had been altered, but believed it had been altered subsequent to his handing over his time sheet to Defendant or his agent. (ECF No. 36 at ¶ 14).

Schatz decided to terminate Plaintiff's employment with Davey Tree because of his altered time sheet and the substantial damage done by his inappropriate spraying of the Game Commission Land. (ECF No. 34 at ¶ 15). Schatz memorialized his decision on a Change to Inactive Status report. (*Id.* at ¶ 16). The Remarks section of the report stated that Plaintiff had sprayed on the restricted land despite specific direction to remain off the land. Schatz also identified Plaintiff's alteration of his time sheet as a basis for the termination. Schatz recorded that First Energy had instructed Davey Tree not to permit Plaintiff to work on its power lines in the future. (*Id.* at ¶ 17).

Following his termination and on September 27, 2012, Plaintiff contacted the Pennsylvania Human Rights Commission ("PHRC") and complained that he had been discharged due to his disability and retaliated against on the basis of his opposition to

4

allegedly discriminatory practices. He provided the PHRC with a current address of 3690

Casanova Road in Munson, Pennsylvania. (*Id.* at ¶ 18). Although Plaintiff moved after

initiating his charge, he never updated his address with the PHRC. (*Id.* at ¶ 19). In

December, 2012, the PHRC sent a letter to the only address it had on file for Plaintiff,

namely 3690 Casanova Road. The letter explained that the PHRC had transferred

Plaintiff's case to the Equal Employment Opportunity Commission ("EEOC") "due to [the

PHRC's] inability to identify a physical location in Pennsylvania to serve the complaint."

(*Id.* at ¶ 20).

Although Plaintiff denied receiving the letter due to his move, Davey Tree and

Plaintiff's counsel both received copies. Plaintiff still receives mail forwarded from the

3690 Casanova Road address. (*Id.* at ¶ 21).

By letter dated February 11, 2013, the EEOC sent Plaintiff, at the 3690 Casanova

Road address, a draft charge form and requested Plaintiff make any changes to the draft

charge form, sign it, and return it within thirty days. The failure to return the signed

charge form would result in the dismissal of Plaintiff's charge and the issuance of a right-

to-sue letter. (*Id.* at ¶ 22).

Plaintiff never updated his contact information with the EEOC. (*Id.* at ¶ 23). On

April 26, 2013, the EEOC sent Plaintiff a Dismissal and Notice of Rights letter. (*Id.* at ¶ 24).

By letter dated January 8, 2014, Plaintiff, through counsel, contacted the EEOC "to

determine the status" of his charge. In that letter, counsel for Plaintiff acknowledged his

receipt of the letter dated December 13, 2012, from the PHRC stating that Plaintiff's claim

had been referred to the EEOC. (*Id.* at ¶ 25). Plaintiff repeatedly denied needing or requesting any accommodations in his filings with the PHRC. (*Id.* at ¶ 26).

Count I of Plaintiff's Complaint asks for lost wages, damages and counsel fees as a result of Davey Tree's violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (ECF No.1-2 at 5).

Count II of Plaintiff's Complaint requests lost wages, damages, counsel fees, and costs as a result of Davey Tree's violation of the Pennsylvania Human Relations Act, 43 P.S. §§ 951–963. (*Id.* at 7).

## IV. Legal Standard

### a. Summary Judgment Standard

Summary judgment should be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those affecting the outcome of trial. *Id.* at 248.

The court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581. (3d Cir. 2009). "In making this determination, a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in

6

that party's favor." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (internal citation and quotation omitted).

The moving party must initially demonstrate the absence of any genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must go beyond the pleadings, using affidavits, depositions, admissions, or answers to interrogatories to show genuine issues of material fact for trial. *Id.* at 324. The nonmoving party cannot defeat a well-supported motion for summary judgment by simply reasserting unsupported factual allegations contained in the pleadings. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989).

## V. Analysis

### a. The statute of limitations on Plaintiff's ADA claim

The Court already laid out the applicable law regarding the statute of limitations for charges filed with the EEOC in its Memorandum Opinion and Order on Defendant's Motion to Dismiss. (ECF No. 43). The Court will restate the law again here.

A plaintiff seeking to file suit in federal court under Title VII must first file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and must receive from the EEOC a right-to-sue letter. 42 U.S.C. § 2000e-5(f)(l); *Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3d Cir. 1990). The plaintiff has 90 days from the date on which he or she receives the letter to file a civil action in federal court. *Mosel v. Hills Dep't Store*, 789 F.2d 251, 253 (3d Cir. 1986) (holding plaintiff's complaint untimely because filed 91 days after receipt of right-to-sue letter). It is presumed that the

7

date of receipt of a right-to-sue letter is three days after its mailing. *See* Fed. R. Civ. P. 6(e); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n. 1 (1984). "The on-set of the 90–day period is generally considered to be the date on which the complainant receives the right-to-sue letter." *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001) (citing *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *Mosel v. Hills Dept. Store, Inc.*, 789 F.2d 251, 252 (3d Cir. 1986) (per curiam)).

The Third Circuit has strictly construed the 90-day period, and "in the absence of some equitable basis for tolling, a civil suit filed even one day later is time-barred and may be dismissed." *Id.* (citing *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 176 (3d Cir. 1999)). "Equitable tolling functions to stop the statute of limitations from running where the claim's accrual date has already passed." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994).

There are three principal, though not exclusive, situations in which a court may apply equitable tolling: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.*

The regulations provide that "[t]he person claiming to be aggrieved has the responsibility to provide the Commission with notice of any change in address and with notice of any prolonged absence from that current address so that he or she can be located when necessary during the Commission's consideration of the charge." 29 C.F.R. § 1601.7.

8

Defendant reasserts the same argument at summary judgment that it already made in its Motion to Dismiss, namely that Plaintiff's ADA claim fails because Plaintiff did not file his lawsuit within the 90- day statute of limitations applicable to ADA claims. (ECF No. 33 at 8).

Plaintiff counters that equitable tolling should be applied in this case because the EEOC failed to send the letter to Plaintiff's residence at the time, and it failed to send a copy to Plaintiff's Counsel of record. (ECF No. 37 at 5). Plaintiff contends that he only learned about the April 26, 2013, right-to-sue letter when Plaintiff's Counsel inquired on January 8, 2014, as to the status of Plaintiff's case. (*Id.*). According to Plaintiff, EEOC sent Plaintiff's Counsel an email on January 13, 2014, which had the right-to-sue letter attached. (*Id.*). Thus, Plaintiff asserts that for purposes of the statute of limitations, January 13, 2014, was the date at which he actually knew of the right-to-sue letter. He argues that the clock should have started to run from that date, and that his complaint was therefore timely filed. (*Id.*).

Plaintiff never updated his address with the EEOC. Thus, the EEOC sent the letter to the address it had on record. The Court finds no reason to apply equitable tolling in this case. Though the EEOC mailed Plaintiff's right-to-sue letter on April 26, 2013, Plaintiff did not file suit until April 10, 2014, approximately nine months past the running of the statute of limitations. Plaintiff cannot now rely on his lack of diligence in failing to update his address with the EEOC to assert that equitable tolling should apply here.

The EEOC must notify a claimant of the status of his or her charge within 180 days of the filing of the charge. 42 U.S.C. § 2000e-5(f)(1). However, Plaintiff failed to make any

9

inquiry regarding his charge until January 8, 2014, which was over a year after it was filed in September, 2012. Plaintiff's failure to inquire about the status of the charge constitutes a further lack of due diligence, and is a further reason why the Court finds that Plaintiff is not entitled to equitable tolling in this case.

Plaintiff's ADA claim is barred because Plaintiff failed to file his claim within the requisite 90-day period, and he provided the Court with no justifiable reason why the statute of limitations should have been tolled.

### b. Plaintiff's PHRA claim

Defendant also reasserts the second argument that was raised in its Motion to Dismiss, namely that Plaintiff's PHRA claim fails because he did not exhaust his administrative remedies prior to filing suit. (ECF No. 33 at 9).

To bring suit under the PHRA, a plaintiff must first have filed an administrative complaint with the PHRC within 180 days after the alleged act of discrimination. 43 Pa. S. §§ 959(a), 962. If a complainant invokes the procedures set forth in the PHRA, "that individual's right of action in the courts of the Commonwealth shall not be foreclosed." *Id.* at 962(c)(1).

Further, "[i]f within one (1) year after the filing of a complaint with the Commission, the Commission dismisses the complaint or has not entered into a conciliation agreement to which the complainant is a party, the Commission must so notify the complainant. On receipt of such a notice the complainant shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act." *Id.* The requirement to file with the

10

PHRC is strictly enforced, and persons with cognizable claims under the PHRA must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act. *Woodson v. Scott Paper Co.*, 109 F.3d 913, 924 (3d Cir. 1997) (citations omitted). The filing requirement of the PHRA "allows the PHRC to use its specialized expertise to attempt to resolve discrimination claims without the parties resorting to court." *Id.*

The Third Circuit has confirmed that after one year has elapsed since the filing of a claim with the PHRC, a complainant may bring a court action regardless of whether or not he has received notice from the PHRC. *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) (citing *Snyder v. Pennsylvania Ass'n of Sch. Retirees*, 566 A.2d 1235, 1240 (Pa. Super. 1989)).

The PHRC neither dismissed Plaintiff's complaint nor entered into a conciliation agreement. On or about December 13, 2012, before conducting an investigation or reaching a determination, the PHRC transferred the case to the EEOC. The EEOC then issued a right-to-sue letter.

Plaintiff counters that he filed with the Pennsylvania Human Relations Commission and received a case number of 201201518 for his complaint. (ECF No. 37 at 6). Plaintiff therefore claims that he exhausted his administrative remedies at both the state and federal level before filing the timely complaint in April of 2014. (*Id.*).

The Court finds that Plaintiff exhausted his administrative remedies with the PHRC because he did what was within his power to bring a claim with the PHRC. The PHRC chose to refer the case to the EEOC because it was unable to serve Defendant with

11

the complaint in Pennsylvania. Plaintiff was entitled to bring a court action after one year had elapsed regardless of whether or not he had received a right-to-sue letter from the PHRC. *See Burgh*, 251 F.3d at 471. However, as discussed below, the Court finds that Plaintiff's claim fails as a matter of law. Thus, Plaintiff's exhaustion of administrative remedies is immaterial to the ultimate outcome of the pending Motion for Summary Judgment.

### c. Plaintiff's discrimination claim

Defendant finally argues that Plaintiff's ADA and PHRA claims fail as a matter of law. (ECF No. 33 at 10).

Plaintiff's claims are governed by the Supreme Court's burden-shifting test laid down in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff must first establish a *prima facie* case of disability discrimination, namely that he (1) has a disability; (2) is a qualified individual; and (3) has suffered an adverse employment action because of his disability. *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006) (citing *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 (3d Cir. 2002); *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)).

If a plaintiff establishes a prima facie case of discrimination, then an inference of discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). If the defendant does so, then the inference of

discrimination drops and the burden shifts back to the plaintiff to show that the defendant's proffered reason is merely pretext for intentional discrimination. *Id.*

### i. *Prima facie* case of discrimination

The parties do not dispute that Plaintiff suffered a disability and was a qualified individual for purposes of establishing his *prima facie* case of disability discrimination. However, the Court finds that Plaintiff is unable to present a genuine dispute of material fact as to whether he suffered adverse employment action due to his disability. *See Turner,* 440 F.3d at 611.

Plaintiff identified three events during his deposition which he believed were the reason for his termination. He testified about an incident at a fruit orchard which occurred in approximately January or February of 2012. The owner of the orchard had told Plaintiff not to spray around the line. Plaintiff contacted Schatz, who instructed him to spray, but Plaintiff refused to do so. He also testified about an incident involving a drug test in early June of 2012. Another Foreman supervised by Schatz had allegedly refused to take a urinalysis test. Plaintiff reported this to Schatz, who allegedly told Plaintiff to "mind his own business." Plaintiff finally testified that he refused to perform certain tasks for Schatz. (ECF No. 33 at 11–12, *citing* ECF No. 33-2 at 15–16, 19, 23–24, 31, 42–43, 45). Plaintiff claims that Schatz called him names, such as stumpy, hop-a-long and gimp, which Defendant asserts to be entirely uncorroborated. (*Id.* at 12, *citing* ECF No. 33-2 at 15–16, 23–24).

13

In response to Plaintiff's claim that the above incidents were the reason for his termination, Defendant counters that none of these incidents relate to Plaintiff's prosthetic leg. Further, Defendant notes that Davey Tree did not discipline Plaintiff for the occurrences related by Plaintiff which he believed were the reasons for his termination. Thus, Defendant avers that these incidents are unrelated to his termination. (ECF No. 33 at 12).

The Court finds no genuine issue of material fact as to whether or not Plaintiff's employment was terminated due to his disability. Rather, the above-referenced incidents appear to be entirely unrelated to Plaintiff's disability and ultimate termination of employment. Considering the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has raised no genuine issue of material fact as to the reasons for his termination.

Plaintiff claims that he was subjected to name-calling by Schatz. Defendant counters that any name-calling by Schatz is uncorroborated, and that the only specific example of Schatz's alleged name-calling provided by Plaintiff "appears positive and complimentary of Plaintiff and his work ethic: Schatz allegedly said, '[T]his guy do[es]n't even have a leg and works harder than you three guys.'" (ECF No. 33 at 12–13). Defendant further argues that even if Plaintiff's uncorroborated claims of name-calling were credited, those instances merely constitute "occasional insults, teasing, or episodic instances of ridicule" that are insufficient to serve as evidence of discrimination. (ECF No. 33 at 13).

The Court agrees with Defendant that even if these episodes of name-calling were lent credence, they are insufficient to support a claim that Plaintiff was subject to discrimination. Plaintiff has alleged no factual connection in his pleadings between the comments and his termination. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). The Court finds that the name-calling by Defendant is insufficient to establish that Plaintiff was subject to disability discrimination or that his employment was terminated due to disability discrimination. Plaintiff has not presented any disputes of material fact that would lead a jury to find otherwise.

Plaintiff also claims that Schatz and Nathan Smith ("Smith"), another General Foreman, purposely set him up for failure by making him spray around the power structures because they wanted him to be gone from the workplace. (ECF No. 37 at 8). Plaintiff contends that his promotion to Foreman does not call into question the fact that he had been discriminated against, because his promotion had not been recommended by Schatz, but rather by someone above Schatz. (*Id.*).

Considering the facts in the light most favorable to Plaintiff, the Court does not find that Plaintiff has raised a genuine issue of material fact that would lead a jury to find in his favor on the basis that he was subject to adverse employment action due to his disability. Plaintiff's claim that he was purposefully set up by Smith and Schatz is pure speculation.

### ii. Davey Tree's legitimate, nondiscriminatory reason for terminating Plaintiff's employment

Once a plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). The Court finds that even if Plaintiff could establish a *prima facie* case of discrimination, Defendant had two legitimate, non-discriminatory reasons for terminating Plaintiff. First, Plaintiff inappropriately sprayed the restricted Pennsylvania Game Commission lands, which resulted in substantial damage to that property. The Court finds that Defendant has not raised a genuine issue of material fact as to whether or not he was aware that the sprayed land constituted Pennsylvania Game Commission Land. In addition, Defendant claims that Plaintiff subsequently also altered his time sheet. Though Plaintiff claims not to have done so, the Court finds that Plaintiff has not raised a genuine issue of material fact on this matter.

### iii. Davey Tree's proffered reasons for terminating Plaintiff's employment did not amount to mere pretext

Once the defendant has articulated a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff bears the burden of establishing that this proffered reason is a pretext for discrimination. *Shaner*, 204 F.3d at 501.

A plaintiff who has made out a *prima facie* case of discrimination may defeat a motion for summary judgment by either "(i) discrediting the employer's proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or

determinative cause of the adverse employment action." *Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007) (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

While the burden of production may shift, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Shaner*, 204 F.3d at 500-01 (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

Summary judgment is appropriate in this matter because Plaintiff is unable to discredit Defendant's proffered reasons for terminating his employment. *See Wishkin*, 476 F.3d at 185. To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken. *Shaner*, 204 F.3d at 50 (quoting *Fuentes*, 32 F.3d at 765). Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer that the employer was not actually motivated by its proffered nondiscriminatory reason." *Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 556 (3d Cir. 2009) (citing *Fuentes*, 32 F.3d at 765). To show that discrimination was more likely than not a motivating or determinative cause of defendant's action, the plaintiff must point to evidence with sufficient probative force for a factfinder to make this conclusion. *Id.* (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir.1998)).

Plaintiff has failed to establish such weakness in Defendant's reasons for terminating his employment that a reasonable factfinder could rationally find them unworthy of credence. *See Parker*, 309 F. App'x at 556. Plaintiff sprayed an area that

17

Defendant asserts Plaintiff had been warned not to spray. As a result of Plaintiff's conduct, Defendant was required to engage in extensive remedial efforts. Furthermore, Plaintiff's time sheet was altered, though he claims not to have done it himself. Plaintiff's pure speculation as to Defendant's reasons for telling him to spray the Game Commission area does not have sufficient probative force to allow the factfinder to conclude that disability discrimination, rather than the two reasons proffered by Defendant, was the actual reason for Defendant's termination of Plaintiff's employment. *See id.*

Plaintiff asserts that he was unknowingly set up by his supervisors to spray the area around three power structures on State Game Commission Land so that they could fire Plaintiff due to his disability. Plaintiff testified that the mere fact that the property was State Game Commission Land did not mean that it was automatically protected. He also testified that he had been directed to and had sprayed Game Commission property before the incident in this case. (ECF No. 37 at 11). In addition, Plaintiff disputes the assertion that he was fired due to his alteration of time sheets. Plaintiff testified during his deposition that he did not know how the relevant section of his time sheet had gotten whited out. (ECF No. 37 at 12).

Plaintiff's theory that he was deliberately sent to spray the Game Commission Area is insufficient to allow a factfinder to conclude that Defendant's proffered reason for his termination was mere pretext. The Court finds that Plaintiff's allegations regarding Defendant's alleged true motivation amount to mere speculation, and that he has failed to raise a genuine issue of material fact as to the allegedly pretextual nature of Defendant's termination of his employment. Plaintiff claims that Smith purposefully misled him in

telling him to spray at Structures 107 through 109. However, Plaintiff has raised no genuine issue of material fact as to whether Smith and Schatz colluded against Plaintiff in giving him misinformation. Plaintiff acknowledged during his deposition that he had seen a sign identifying the land as State Game Commission Land. (ECF No. 33-2 at 27). Plaintiff disputes that he was warned not to spray the Game Commission area and that the sign identified the area as Game Commission land. However, the Court finds that there is insufficient evidence to raise a genuine issue of material fact as to whether Defendant's reason for terminating Plaintiff's employment was mere pretext. The Court also finds that the fact that Plaintiff was hired and promoted despite his disability undermines any allegation that Plaintiff was discriminated against due to his disability.

Plaintiff has also failed to raise a genuine issue of material fact as to whether being fired for altering his time sheet amounted to mere pretext. Plaintiff admitted that his time sheet had been altered, though he claims that he did not alter it himself. Plaintiff's claim that his time sheet was altered after submitting it to Defendant is mere speculation, and does not raise a genuine issue of material fact.

Defendant has articulated two legitimate, nondiscriminatory reasons for firing Plaintiff. Plaintiff has raised no genuine issue of material fact to suggest that Defendant's reasons for not hiring Plaintiff were mere pretext. The Court finds that Plaintiff's claims fail as a matter of law.

## VI. Conclusion

For the foregoing reasons, the Court finds that there are no genuine issues of material fact and that Defendant is entitled to judgment as a matter of law.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JOEL C. CONWAY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | CIVIL ACTION No. 3:14-82 |
| v. | ) | |
| | ) | JUDGE KIM R. GIBSON |
| DAVEY TREE EXPERT COMPANY | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## ORDER OF COURT

AND NOW, on this ___1st___ day of September, 2015, upon consideration of Defendant's

Motion for Summary Judgment (ECF No. 32), and in accordance with the accompanying

Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

GRANTED as to all counts in the Complaint. Judgment will be entered in favor of Defendant,

and against Plaintiff, accordingly.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE